HARRY MATHERS *et al.*, Petitioners, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District    Nos. 81-741, 81-740 cons.

Opinion filed June 28, 1982.—Rehearing denied August 16, 1982.

Eliot A. Landau and G. Geoffrey Wood, both of Landau & Cleary, Ltd., of Downers Grove, for petitioners Harry Mathers, Township of Wheatland, Chuck Lampton, and Cindy Pentzien.

DeBartolo & DeBartolo, of Aurora, for petitioner Raymond Greenberg.

Joseph H. Barnett and Tris Michels Baker, both of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for respondent Donald J. Hamman.

JUSTICE STOUDER delivered the opinion of the court:

These consolidated appeals involve a decision of the Illinois Environmental Protection Agency (hereinafter the Agency) denying Donald J. Hamman's application for a permit to develop a sanitary landfill. That decision was reversed on hearing and again on rehearing by split decisions of the Illinois Pollution Control Board (hereinafter the Board), from which these appeals and a cross-appeal are taken.

The scenario of this dispute began on December 30, 1977, when Hamman applied to the Agency for a permit to develop a sanitary landfill on a 145-acre site adjacent to 111th Street in Wheatland Township, Will County, Illinois. That application and three subsequent applications were denied for reasons not material to the parties' present litigation. On March 25, 1980, Hamman submitted the application for the developmental permit which gives rise to these causes. On July 21, 1980, the Agency found, *inter alia*:

"The Wheatland Township Road Commissioner, the E. J. & E. Railroad, and Planning Horizons, Inc. (See April 25, 1980 Traffic Analysis of 111th Street) concur that 111th Street is not designed to carry the truck traffic associated with a landfill. The Wheatland Township Road Commissioner has not agreed in writing for 111th Street to be upgraded to the specifications recommended by Planning Horizons, Inc. This issue must be resolved in order to ensure that trucks will be able to use 111th Street legally. (Rule 314, 316(1) (4), Chapter 7 of the Illinois Pollution Control Board Rule and Regulations). A Public hearing for this proposed sanitary landfill site will not be considered until this problem has been rectified.

Based upon the above condition, this Agency must deny the permit * * *."

The street in question is the immediate access road to the landfill site. Among its relevant problems are the fact that at several points it can only accommodate one-way traffic, is prone to severe flooding, and is a gravel road. Other facts contributing to the road's unsuitability as a landfill access road need not be articulated, as the need for its improvement is perhaps the only area of agreement.

Rather than submit his application for a sixth time, Hamman appealed the Agency's denial to the Board, which scheduled a public hearing on November 19, 1980. Notice of the hearing was published both in the *Environmental Register* and in the *Joliet Herald*. On November 18, 1980, the Agency and Hamman stipulated that the sole basis of the denial was Hamman's "failure to present any evidence of agreement by the Wheatland Township Road Commissioner for the upgrading of 111th Street * * *." The following day, the hearing was held. Not a single adversarial counsel, public official, representative of the press, or member of the public was in attendance. Pursuant to the Agency's stipulation, the hearing officer found that, with the exception of the road problem, all procedural and substantive requirements had been satisfied. A briefing schedule was arranged, but the Agency's brief was late and this caused Hamman's brief to also be late. In order to allow the Board to render its decision within the statutory time limit, Hamman voluntarily agreed to extend the time of decision until January 22, 1981.

On January 8, 1981, the Board reversed the Agency and remanded this cause for issuance of a developmental permit. The Agency had based its denial on perceived violations of two rules. The Board found that Solid Waste Rule 314(b) (Ill. P.C.B. Rules and Regs., ch. 7, Rule 314(b)) (hereinafter Rule 314(b)) was limited on its face to roads within a site. It further found that Solid Waste Rule 316 (a)(4) (Ill. P.C.B. Rules and Regs., ch. 7, Rule 316 (a)(4)) (hereinafter Rule 316(a)(4)) was not a bar to the

issuance of a permit as it makes no direct reference to roads off the site. A dissent to the Board's opinion queried, "If Rule 316(a)(4) cannot be read to address the effect of such vehicular traffic upon the land use and the population density within the area, then the rule has little meaning." See *Hamman v. Illinois Environmental Protection Agency*, No. PCB 80-153, slip op. at 4 (P.C.B. Jan. 8, 1981 dissenting opinion).

On February 11, 1981, the Agency moved to vacate the Board's order and to set the matter for rehearing. On February 13, 1981, Raymond Greenberg, highway commissioner for Wheatland Township, Harry Mathers, and others petitioned the Board for intervention and for rehearing. On February 19, 1981, the Board granted the motions for intervention and rehearing, but did not vacate the order. On March 5, 1981, Chuck Lampton and Cindy Pentzien petitioned for intervention, for rehearing, and for voiding of all prior Board orders in this cause. The Board allowed their intervention and scheduled the rehearing for April 3, 1981. The various other motions and objections made during this phase of the litigation need not be discussed.

The rehearing commenced as scheduled. While the Board determined that it should focus on the reasons for the denial of the permit, it allowed other matters to be raised as offers of proof, with proponents explaining why the evidence was not of record. This resulted in a continuation of the rehearing on April 24, May 8, May 22, May 29, and June 18, 1981. Twenty-five witnesses and over 100 exhibits addressed a myriad of questions concerning the proposed facility. When the rehearing concluded, the Board had over 1,600 pages of transcript and exhibits to review, in addition to the transcript of the original hearing and Agency record of over 1000 pages. According to the uncontroverted report of one attorney, the initial rehearing was attended by over 200 individuals, including 20 public officials, five adversarial attorneys, and four State legislators.

On November 12, 1981, the requirements for obtaining a developmental permit for, *inter alia*, sanitary landfills were modified. (See Ill. Rev. Stat. 1981, ch. 111½, pars. 1003, 1039, 1039.1, 1040.1.) No permits for the development or construction of a new regional pollution control facility (hereinafter a facility) may now be granted unless an applicant submits proof to the Agency that the facility's location, if in an unincorporated area, has been approved by the county board after a public hearing. Sanitary landfills are considered facilities, and a new facility is one, *inter alia*, initially permitted for development or construction after July 1, 1981.

A week after this modification in the law, the Board rendered its decision on rehearing. While various aspects of its supplemental opinion will be discussed hereafter, we note the Board affirmed its earlier decision and held that the Agency's permit denial for want of a written agreement

with the highway commissioner was an unlawful delegation of its permitting authority. Two dissents were filed. Both were grounded on the inadequacy of the access road.

Before turning to the several issues presented for our review, it is necessary for us to rule on the two motions which have been taken with the case. We have previously issued orders regarding two additional motions.

Hamman has moved to strike and dismiss the initial brief submitted by the Township of Wheatland, Lampton, and Pentzien and to dismiss the three from this appeal. He argues that the township never petitioned for intervention at the administrative level, and that the latter individuals have not shown how they would be adversely affected by the Board's order. In their reply brief, all appellants except Greenberg respond, *inter alia*, that these arguments have been waived as they were not advanced at the administrative level. Hamman, in his supplemental brief, responds that he could not have known the township was claiming intervenor's status until it filed its brief in this court, and that Lampton and Pentzien did not petition to intervene in a timely fashion. This prompted the second motion taken with the case. All appellants except Greenberg moved to strike Hamman's supplemental brief, contending, *inter alia*, that while the timeliness issue was raised at the administrative level, it was not raised at the time of Hamman's initial objection to the individual intervenors on the ground that they were not adversely affected. Other matters raised in these motions need be here considered.

■■ Considering first the status of the Township of Wheatland, we note the provision for review under section 41 of the Environmental Protection Act (hereinafter the Act (Ill. Rev. Stat., 1980 Supp., ch. 111½, par. 1041):

> "Any party to a Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance or permit under this Act, and any party adversely affected by a final order or determination of the Board may obtain judicial review, by filing a petition for review within thirty-five days after entry of the order or other final action complained of ✱ ✱ ✱."

While the township was unquestionably a participant in the rehearing, its failure to petition precludes it from having the status of a party. It is therefore, under the facts herein and above provision, precluded from obtaining judicial review in this court. (See *Lake County Contractors Association v. Pollution Control Board* (1973), 54 Ill. 2d 16, 18, 294 N.E.2d 259, 261-62.) Finding Hamman's objection to be timely, the township's briefs are stricken, and it is dismissed from this cause.

As for Lampton and Pentzien, we find Hamman's objection to their intervention at the administrative level on the basis of untimeliness to be

waived in this court as it itself was untimely. Turning solely to the issue of adverse effect, these individual intervenors alleged that they were residents of a subdivision sharing the same groundwater system with the proposed facility, and dependent on well water. They further alleged an inadequate road system. We find they thus participated in the hearing and adequately alleged adverse effect. Hamman's motion is therefore denied as to these parties. The appellant's motion is also denied as our finding of waiver makes striking the entire responsive brief unnecessary.

The initial issue presented for our review is whether the legal notice of the Board's initial hearing of this cause violated statutory and constitutional notice and public participation requirements. Section 40 of the Act (Ill. Rev. Stat., 1980 Supp., ch. 111½, par. 1040) provides in pertinent part:

> "The Board shall give 21 day notice to any person in the county where is located the facility in issue who has requested notice of enforcement proceedings and to each member of the General Assembly in whose legislative district that installation or property is located; and shall publish that 21 day notice in a newspaper of general circulation in that county."

Procedural Rule 307(b) (Ill. P.C.B. Rules and Regs., part 3, Proc. Rule 307(b)) provides:

> "The hearing shall be held in the county in which the alleged violation occurred or in such other county as the hearing officer shall for stated cause designate. The clerk shall give notice of the hearing at least 21 days before the hearing to:
>
> > 1. All persons on the Board's mailing list by notice in the Board's *Environmental Register*, or by special mailing; and
> > 2. Except when the Agency is complainant, by public advertisement in a newspaper of general circulation in the county in which the cause of action arose."

■■ There can be no question that there was compliance with the procedural rule. Notice was published in the *Joliet Herald* and the *Environmental Register*. The intervenors contend that the residents of Wheatland Township do not generally read the *Joliet Herald*, but read, in order of popularity, the *Suburban Trib, Naperville Sun, Plainfield Enterprise*, and *Aurora Beacon-News*. While this was uncontroverted, the intervenors themselves admit that, with the exception of the *Plainfield Enterprise*, all are published outside Will County. While the circulation of the *Joliet Herald* is not of record, we note that not only is Joliet the county seat of Will County, it is the county's largest municipality. We also note that, before the time the notice was published, law firms had been retained, committees had been formed, and the objectors had written to their legislators and to the Agency. One local official had the courage to admit that his governmental body "subscribed to the *Joliet Herald News*;

delivered to my offices * * * I read the legal notices every day. I don't miss many but somehow I managed to miss the legal notice referred to in these proceedings."

■■ The fact that somehow every attorney, committee, individual, and official missed the notice does not, *ipso facto*, translate into constitutional infirmity. This is especially so when the notice has been placed in the most likely newspaper in the county, and the affected parties were aware that a permit application was pending. The intervenors further claim that part of the explanation for the lack of awareness of the hearing was that the notice itself was defective. The form of notice employed by the Board is illustrated by that noted in its supplemental opinion:

"Notice is hereby given that a public hearing has been scheduled in the matter of PCB 80-153, *Donald Hamman v. EPA*, a permit appeal, on April 3, 1981, at 9:00 A.M. in the Will County Court-house, Grand Jury Room, 14 West Jefferson St., Joliet, Ill."

We can hardly agree with the intervenors that such a notice is "so worded as to defy even a person of above-average intelligence from identifying the nature of the matter involved * * *." We therefore find the newspaper notice met both statutory and constitutional requirements.

More troublesome is the statutory requirement that legislators in affected districts be given notice. Hamman contends that such notice was provided by the Board's traditional mode of notice, the *Environmental Register*. The difficulty with this contention is that while the Board does provide the publication to legislators at no cost, it does so only upon request. Neither of the legislators who addressed the issue at the rehearing was sure if his office received the *Register*; however, we need not reach the question of whether this mode of notice is statutorily sufficient nor the question of whether the intervenors have standing to raise it. The board found, and we agree, that any deficiency in notice of the November hearing was cured during the rehearing process. We note parenthetically that since this first challenge to the notice process, the Board has begun to notify legislators of permit appeals by letter. *Hamman v. Illinois Environmental Protection Agency*, No. PCB 80-153 (P.C.B. Nov. 19, 1981).

We are next presented with a series of issues concerning whether the granting of the permit was against the manifest weight of the evidence: (1) Whether there was a proper record to support the actions of the Agency and Board; (2) whether the pre-April 1981 record contains inadequate evidence to justify the issuance of a developmental permit; (3) whether the Agency and Board improperly relied on evidence from a biased source in violation of due process; and (4) the manifest weight question itself. Before turning to these issues, we first must consider the further issue of whether the Board erred in determining its scope of review.

In its supplemental opinion, the Board held that the sole substantive issue before it was the road issue. It accordingly rejected all offers of proof not relating to the lack of an agreement for the upgrading of 111th Street. The intervenors, in effect, argue the rehearing should have been in the nature of a hearing *de novo*.

Section 39(a) of the Act (Ill. Rev. Stat., 1980 Supp., ch. 111½, par. 1039(a)) provides in pertinent part:

"If the Agency denies any permit under this Section, the Agency shall transmit to the applicant within the time limitations of this Section specific, detailed statements as to the reasons the permit application was denied. Such statements shall include, but not be limited to the following:

(i) the sections of this Act which may be violated if the permit were granted;

(ii) the provision of the regulations, promulgated under this Act, which may be violated if the permit were granted;

(iii) the specific type of information, if any, which the Agency deems the applicant did not provide the Agency and;

(iv) a statement of specific reasons why the Act and the regulations might not be met if the permit were granted."

Section 40(c) of the Act (Ill. Rev. Stat., 1980 Supp., ch. 111½, par. 1040(c)) provides that the review of a permit denial "be based exclusively on the record before the Agency * * * unless the parties agree to supplement the record." In *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 557, 387 N.E.2d 258, 264, the court noted the statutory roles of the Board and Agency in the permitting process:

"The Board's principal function is to adopt regulations defining the requirements of the permit system (Ill. Rev. Stat. 1975, ch. 111½, pars. 1005(b), 1039). The Agency's role is to determine whether specific applicants are entitled to permits (Ill. Rev. Stat. 1975, ch. 111½, par. 1039). The need for a technical staff capable of performing independent investigations dictates that the job of administering the permit system be entrusted to the Agency rather than the Board (Currie, *Enforcement Under Illinois Pollution Law*, 70 Nw. U.L. Rev. 389, 475 n.427 (1975)). If the Board were to become involved as the overseer of the Agency's decision-making process through evaluation of challenges to permits, it would become the permit-granting authority, a function not delegated to the Board by the Act.

The one statutory exception to the Board's quasi-legislative role in relation to permits is in instances in which the Agency has denied a permit (Ill. Rev. Stat. 1975, ch. 111½, pars. 1005(d), 1040). Explicit procedural requisites are established for Board review of permit

denials (Ill. Rev. Stat. 1975, ch. 111½, par. 1040), and Agency appearance at such permit-denial hearings is mandated (Ill. Rev. Stat. 1975, ch. 111½, par. 1004(f)). The Agency is also required to transmit to the applicant a detailed statement as to the reasons the permit application was denied (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(a))."

In *Environmental Protection Agency v. Pollution Control Board* (1981), 86 Ill. 2d 390, 427 N.E.2d 162, as in the case at bar, the Board ordered the Agency to issue a permit it had previously denied. The initial denial was by letter:

" 'As required by Section 39 of the Illinois Environmental Protection Act, specific reasons why the Rules and Regulations might not be met follow:

The #8, #10, #11, and #12 blast furnaces emit particulate matter, by our analyses, in excess of that amount allowed by Rule 203(a). Therefore no permit may be granted.' " (*Environmental Protection Agency v. Pollution Control Board* (1981), 86 Ill. 2d 390, 395, 427 N.E.2d 162, 164.)

U.S. Steel Corporation petitioned the Board alleging that the Agency had improperly applied the above rule to emissions governed by Air Pollution Rule 203(f) (Ill. P.C.B. Rules and Regs., ch. 2, Rule 203(f)), which deals with fugitive particulates and with which it was in compliance. The court concluded:

"We do not believe, however, that the issue of compliance with Rule 203(f) was even before the Board. Section 39 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1039) requires that the Agency state reasons for denial of a permit: 'If the Agency denies any permit under this Section, the Agency shall transmit to the applicant within the time limitations of this Section [90 days] specific, detailed statements as to the reasons the permit application was denied,' including '(ii) the provision of the regulations, promulgated under this Act, which may be violated if the permit were granted' (Ill. Rev. Stat. 1977, ch. 111½, par. 1039). The Agency's letters did not specify any violation of Rule 203(f). * * * We believe that the Agency had a duty, reading sections 39 and 40 of the Act together, to specify reasons for the denial, including, if it intended to raise the issue before the Board, the lack of compliance with Rule 203(f), or be precluded from raising that issue." *Environmental Protection Agency v. Pollution Control Board* (1981), 86 Ill. 2d 390, 405, 427 N.E.2d 162, 169-70.

In the case at bar, the Agency denied the developmental permit because of the anticipated violation of Rules 314(b) and 316(a)(4). The Board therefore appropriately limited its review to the alleged Rule

316(a)(4) violation after the Agency had conceded its position on the former rule. The Board further appropriately followed its statutory mandate in rejecting the offers of proof. This being the case, we shall limit our consideration of the aforementioned four issues to the road issue and the constitutional question.

The intervenors contend that their right to due process of law was violated when the Agency and Hamman stipulated that, except for the road issue, the application complied with all statutory requirements without giving the public adequate notice of the proceedings and the opportunity to cross-examine witnesses and rebut the evidence presented by Hamman. They further allege the Agency "rubber-stamped" a "highly biased and personally interested" source of evidence, further depriving them of due process.

■■ We have no quarrel with the proposition that administrative as well as judicial proceedings are governed by the fundamental principles and requirements of due process of law. (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 416 N.E.2d 1082.) The issue of notice has previously been addressed. As to the remaining allegations:

> "The constitutional argument is without merit in light of the statutorily established mechanism for persons not directly involved in the permit-application process to protect their interests without embroiling the Board in an examination of the Agency's permit-granting procedure.
>
> Section 31(b) authorizes citizen complaints against alleged violators of the Act, any Board rule or regulation, or Agency permit; it requires the Board to hold a hearing on all such complaints which are not 'duplicitous or frivolous' (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(b)). At that hearing, the complainant bears the burden of showing actual or threatened pollution or actual or threatened violations of any provisions of the Act, rules, regulations, or permits. (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(c).) The grant of a permit does not insulate violators of the Act or give them a license to pollute; however, a citizen's statutory remedy is a new complaint against the polluter, not an action before the Board challenging the Agency's performance of its statutory duties in issuing a permit. As the principal draftsman of the Act has noted, 'One receiving a permit for an activity that allegedly violates the law can be charged with causing or *threatening to cause* such a violation in a citizen complaint under section 31(b), and the regulations expressly provide that the existence of a permit is no defense to such a complaint.' (Emphasis added.) Currie, *Enforcement Under Illinois Pollution Law*, 780 Nw. U.L. Rev. 389, 478 (1975)." (*Landfill, Inc.*

*v. Pollution Control Board* (1978), 74 Ill. 2d 541, 559-60, 387 N.E.2d 258, 265.)

See also *South Elgin v. Waste Management of Illinois, Inc.* (1978), 62 Ill. App. 3d 815, 379 N.E.2d 349.

This brings us to the remaining three issues of this aspect of the litigation. As previously noted, there has never been any question as to the inadequacy of the access road, and this inadequacy is supported in the Agency record. In its initial opinion the Board found Rule 316(a)(4) was inapplicable as the rule "makes no direct reference to roads off the site." (*Hamman v. Illinois Environmental Protection Agency*, No. PCB 80-153, slip op. at 2 (P.C.B. Jan. 8, 1981).) In its supplemental opinion, it found "the Agency has unlawfully delegated its permitting authority" and added:

> "To the extent that the Agency's denial was a result of environmental concerns rather than traffic control or other concerns, the environmental concerns could have been satisfied by issuance of a permit containing a condition that 111th Street be improved by Hamman at his expense, as Hamman has repeatedly agreed to do. * * *" (*Hamman v. Illinois Environmental Protection Agency*, No. PCB 80-153, slip op. at 11 (P.C.B. Nov. 19, 1981).)

As the supplemental order provides that "the Board clarifies its Opinion and reaffirms its Order of January 8, 1981 * * *" (*Hamman v. Illinois Environmental Protection Agency*, No. PCB 80-153, slip op. at 12 (P.C.B. Nov. 19, 1981)), we shall address both holdings. Before doing so, a final digression is necessary.

The intervenors and Hamman each advance an issue which could render our decision on the ultimate evidentiary question unnecessary. The intervenors contend that Hamman is bound by the change in the law regarding, *inter alia*, sanitary landfills, and therefore the permit must be denied for want of a public hearing and county board approval. Hamman contends, on cross-appeal, that the permit issued by operation of law as there was no final Board action within the statutorily prescribed time.

Turning first to the applicability of the amendments to the Act, the new law is applicable to this case. (See *Cronin v. Lindberg* (1976), 66 Ill. 2d 47, 54, 360 N.E.2d 360, 363.) Therefore, under the relevant provisions previously set forth, we must determine whether the sanitary landfill is a new facility. This determination rests on whether the facility was "initially permitted for construction after July 1, 1981." The Board found as follows:

> "Finally, the Board wishes to again comment that, in its opinion, final action concerning this permit was taken on January 8, 1981. Reference should be made to that date in determining the applica-

bility of any legislative enactments subsequent to the Agency's denial decision of July 21, 1980, regardless of the date on which the Agency completes the now-ministerial task of issuing the permitting paper." *Hamman v. Illinois Environmental Protection Agency*, No. PCB 80-153, slip op. at 12 (P.C.B. Nov. 19, 1981).

The reason for this finding may be indicated by Hamman's contention that the permit issued by operation of law. The Act mandates that final action on permit reviews by the Board must take place within 90 days of the filing of the petition, or the petitioner may deem the permit issued. (Ill. Rev. Stat., 1980 Supp., ch. 111½, par. 1040(a).) Hamman agreed to extend the 90-day period to January 22, 1981, and the Board filed its initial order and opinion well within the extended period. He now argues that, if the permit did not issue on January 8, 1981, it must be deemed to have issued on January 23, 1981. Based on this argument, Hamman objected to the rehearing and renews his objection on appeal.

Procedural Rule 333 (Ill. P.C.B. Rules and Regs., ch. 3, Proc. Rule 333) provides that motions for rehearing, and certain other motions, may be filed within 35 days after the adoption of a final order. While no explicit statutory authority sanctions Board rehearings, they have been found to be within the purview of the Act. (See *Modine Manufacturing Co. v. Pollution Control Board* (1976), 40 Ill. App. 3d 498, 501, 351 N.E.2d 875, 877-78, *appeal denied* (1976), 64 Ill. 2d 596.) In *Modine*, the 90-day limit was extended by the parties' stipulation. Where a party has not so agreed, the limit is binding. (See *Marquette Cement Manufacturing Co. v. Pollution Control Board* (1980), 84 Ill. App. 3d 434, 437, 405 N.E.2d 512, 516.) The Board's own rules provide that certain motions do not affect the finality of certain final orders (see Ill. P.C.B. Rules and Regs. part 3, Proc. Rule 334(c)(1)), and by utilizing the same rationale here, the 90-day limit is allegedly not exceeded. If the finality of the order is affected, then the permit would issue by operation of law. Given this situation, it is unnecessary for us to reach either issue. In either case, the facility was "initially permitted for development or construction" before July 1, 1981, and thus is not a new facility. This being the case, a public hearing and county board approval are unnecessary.

Having so found, we conclude with the consideration of the Board's decisions. Turning first to the alleged improper delegation of authority, we note that the Agency "has not been authorized to delegate the responsibility placed upon it by the General Assembly to decide whether or not a sanitary landfill should be permitted to operate at a specified location." (*Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 410, 343 N.E.2d 493, 496.) While we might comment, by way of *dictum*, that allowing Greenberg to block the improvement of the road at Hamman's

expense might well be viewed as such a delegation, it will be seen that a holding on the issue is unnecessary.

Regardless of the reason, Hamman has failed to present any evidence that the access road will be upgraded to the specifications accepted by the Agency. The Board acknowledges that Solid Waste Rule 316(a)(4) could serve as the basis of a permit denial if supported by sufficient findings of fact in the Agency's denial letter. While the better practice would clearly be to adhere to the Act's mandate (See Ill. Rev. Stat., 1980 Supp., ch. 111½, par. 1039 (a)(iv)), Hamman here conceded the necessity of the required action. At no point in time has he even intimated that the failure to upgrade the road would do anything but cause environmental damage. Under these specific circumstances, we do not find the lack of specific reasons in the denial letter eliminates the applicability of the subject rule.

■■ The conceded need for the upgrading of the road, coupled with the Agency record containing the road study accepted by the Agency, provides a proper and pre-April 1981 record to support the Agency's conclusions regarding the road. Given this situation, we find the Board's order to issue the developmental permit, in its present form, to be against the manifest weight of the evidence. We therefore reverse the Board's orders and remand this cause to the Board with directions that it order the Agency to issue a developmental permit "containing a condition that 111th Street be improved * * *" (*Hamman v. Illinois Environmental Protection Agency*, No. PCB 80-153, slip op. at 11 (P.C.B. Nov. 19, 1981)) *according to the specifications accepted by the Agency.* The intervenors remain free to pursue administrative and judicial remedies as sanctioned by the Act and the Board's regulations.

Accordingly, the Board's orders are reversed and this cause re-manded with directions.

Reversed and remanded with directions.

ALLOY and HEIPLE, JJ., concur.