THE COUNTY OF WILL *ex rel.* EDWARD F. MASTERS, State's Attorney of Will County, *et al.*, Plaintiffs-Appellants, v. WASTE MANAGEMENT OF ILLINOIS, INC., *et al.*, Defendants-Appellees.

Third District    Nos. 3—88—0119, 3—88—0257, 3—88—0258 cons.

Opinion filed May 2, 1989.

Neil F. Hartigan, Attorney General, of Springfield, and Michael J. Martin, of Dunn, Leinenweber & Dunn, Ltd., of Joliet (Robert J. Ruiz, Solicitor General, and Matthew J. Dunn and Michelle D. Jordan, Assistant Attorneys General, of Chicago), for the People.

Edward F. Masters, State's Attorney, of Joliet (John X. Breslin and

Terry Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant County of Will.

Louis R. Bertani, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, and Pedersen & Houpt, of Chicago (Michael J. Martin and Donald J. Moran, of counsel), for appellee Waste Management of Illinois, Inc.

Paul Jagiello, of Maywood, for appellee Illinois Environmental Protection Agency.

JUSTICE BARRY delivered the opinion of the court:

On September 24, 1987, the County of Will filed a four-count complaint for injunctive relief against defendants Waste Management of Illinois, Inc. (Waste Management), and the Illinois Environmental Protection Agency (the Agency) seeking to restrain Waste Management from operating a solid waste disposal site upon property located at 111th Street in Wheatland Township, Will County, Illinois. The complaint was subsequently amended to include only three counts, and the People of the State of Illinois, through the Illinois Attorney General, were granted leave to intervene and adopt the county's pleadings. The circuit court of Will County ultimately dismissed a second amended complaint with prejudice on January 20, 1988. Post-trial motions filed by the State for reconsideration, modification and leave to file a third amended complaint were denied on February 26 and March 14, 1988, and plaintiffs filed their notices of appeal on April 12, 1988.

The issues presented for our consideration are: (1) whether the complaint was improperly dismissed for failure to allege specific facts constituting a substantial and imminent danger to the environment; (2) whether plaintiffs were required to exhaust administrative remedies pursuant to section 31(b) of the Environmental Protection Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1031(b)) (the Act); (3) whether the circuit court's finding that the disposal site is not a "new regional pollution control facility" as defined in section 3.32 of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1003.32) was in error; and (4) whether the circuit court abused its discretion in denying the State leave to file its proposed third amended complaint.

Before addressing the issues, we must dispose of defendants' motions to dismiss the appeal, which were taken with the case. Defendants contend that the circuit court's February 26, 1988, order finally disposed of the only proper post-trial motion filed in this case—that is, the State's "Motion to Reconsider and Modify th[e] Court's January

20, 1988 Order." This motion was filed on February 18, 1988, contemporaneously with the State's "Motion to Modify th[e] Court's January 20, 1988 Order to Allow the People to File Their Third Amended Complaint."

■ Defendants correctly point out that the State's latter motion is not among those post-judgment motions listed in section 2–1203(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2–1203(a)) and cannot be granted after a judgment of dismissal without vacating or setting aside the underlying judgment. (*Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 435 N.E.2d 877; *Fultz v. Haugan* (1971), 49 Ill. 2d 131, 273 N.E.2d 403.) Certainly where *successive* post-judgment motions are filed, precedent dictates that the losing party cannot hope to delay the time for appeal with a motion for leave to file an amended complaint. This was the situation in *Fultz*, and the policy for this rule was explained by our supreme court in *Sears v. Sears* (1981), 85 Ill. 2d 253, 422 N.E.2d 610. In *Sears*, the court held that "successive post-judgment motions are impermissible when the second motion is filed more than 30 days after the judgment or any extension of time allowed for the filing of the post-judgment motion." 85 Ill. 2d at 259, 422 N.E.2d at 613 (reaffirming the rule of *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 255 N.E.2d 900).

■ The facts before us, however, are somewhat unique in that the State's motion for leave to amend was filed within the 30-day period allowed for post-judgment motions and well before the court ruled on any post-judgment motion. The record discloses that at the hearing on the State's motions on February 26, the court announced that the State's motion to modify and for leave to file a third amended complaint would be taken under advisement. In a docket entry of March 1, the court ruled against the State and charged Waste Management with presenting a written order. The order was signed, as aforesaid, on March 14, 1988.

It is thus apparent that the delay in disposing of all post-judgment matters was not occasioned in this case by the losing party, but by the court and the party charged with preparing a written order. Under the circumstances, the policy considerations cited by the *Sears* court— *e.g.*, avoidance of "judge shopping," harassment and inefficient court administration—would not dictate that plaintiffs' appeals here be dismissed as untimely.

We note, moreover, that the State's motion to modify and for leave to file a third amended complaint is substantially the same as a "motion to set aside [an order of] dismissal on the ground that the defect in the complaint could be easily cured by amendment." This,

according to the *Sears* court, was the nature of the first of two successive post-judgment motions filed by the plaintiff in *Drafz v. Parke Davis Co.* (cause No. 53186), consolidated for appeal with *Sears.* (*Sears*, 85 Ill. 2d at 257, 422 N.E.2d at 611.) The court's discussion indicates that the time for appeal in *Drafz* ran from the date of the circuit court's denial of the motion to set aside. If, as defendants contend here, the State's hybrid "motion to modify and for leave to file a third amended complaint" is neither a permissible post-judgment motion under section 2—1203(a) of the Code of Civil Procedure, nor operative to stay enforcement of the underlying judgment, then it would seem that plaintiff's notice of appeal in *Drafz* should have been filed within 30 days of the order dismissing the complaint, instead of within 30 days of the order denying the first post-judgment motion. We hold, therefore, that inasmuch as the State's motion to modify and for leave to file a third amended complaint in this case was filed within the 30-day period allowed for post-judgment motions, plaintiffs' notices of appeal, filed within 30 days of the denial of said motion, were timely and sufficient to confer appellate jurisdiction pursuant to Supreme Court Rule 303 (107 Ill. 2d R. 303).

On the merits, we find that plaintiffs' complaint should not have been dismissed. The waste disposal site here at issue was the subject of this court's attention in a prior suit involving defendant Waste Management's predecessors in interest, Donald and Carol Hamman. (*Mathers v. Pollution Control Board* (1982), 107 Ill. App. 3d 729, 438 N.E.2d 213.) We there considered whether adequate notice of the initial public hearing before the Illinois Pollution Control Board was given pursuant to section 40 of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1040) and whether the Board's decision ordering the Agency to grant the developmental permit was contrary to the manifest weight of the evidence. We found the notice statutorily and constitutionally adequate, and we held that the Board's decision was erroneous with respect to the upgrading of the access road. We remanded the cause "with directions *** to issue a developmental permit 'containing a condition that 111th Street be improved.' " 107 Ill. App. 3d at 741, 438 N.E.2d at 222, quoting *Hamman v. Illinois Environmental Protection Agency*, No. PCB 80—153, slip op. at 11 (P.C.B. Nov. 19, 1981).

According to the complaint filed by plaintiffs in this case, the Hammans subsequently obtained a developmental permit, and, in 1983, they applied to the Agency for a "supplemental permit to modify the developmental and operational plan," proposing, *inter alia*, to increase the landfill height. The supplemental permit was granted by

the Agency on March 25, 1983. In 1985, an operational permit was issued, and the property and developmental and operational permits were transferred to defendant Waste Management. This suit, as aforesaid, was instituted on September 24, 1987, a week before Waste Management proposed to begin its operations at the site. At the present time and pursuant to an order of the circuit court, the site is now in operation.

The complaint further alleges that sections 39(c) and (i) of the Act (Ill. Rev. Stat. 1987, ch. 111½, pars. 1039(c), (i)) were violated by the Agency's issuance of permits in 1985 without approval by the Will County Board and without adequate financial assurances that the closure and post-closure plans would be implemented. The complaint alleges, *inter alia*, that Wolf Creek, a tributary of the Du Page River, flows through the site, serves more than 640 acres, and its course has been altered by Waste Management; that the area of the landfill site is in a flood plain; that a high water table and a shallow aquifer exist in the area; that within a mile of the site there are at least three subdivisions with at least 350 private wells sharing the aquifer; that the site as it originally existed contained soils too permeable to prevent the migration of environmentally harmful leachate; and that Waste Management's closure and post-closure plans are inadequate because, given the site location, active dewatering of the trenches will be necessary for an indefinite period of time. Count I prays for an injunction restraining Waste Management from operating the waste disposal site until an adequate closure and post-closure plan and adequate financial assurances are furnished. Count II prays for a permanent injunction restraining Waste Management from operating the site on the ground that it poses a substantial danger to the safety of the environment and the public health of the citizens of Will County. Count III prays for a preliminary injunction pending the outcome of this suit, declarations that permits issued by the Agency for the development and operation of the site are void, and for a permanent injunction restraining Waste Management from operating the site until valid permits are obtained.

The trial court dismissed counts I and II on the ground that plaintiffs had failed to allege specific facts constituting a substantial and imminent danger to the environment. Count III was dismissed because the trial court found that the site was not a "new" regional pollution control facility as defined by section 3.32 (formerly, section 3x) of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1003.32). The court further found that plaintiffs had failed to exhaust their administrative remedies under section 31(b) of the Act (Ill. Rev. Stat. 1987, ch.

111½, par. 1031(b)).

In support of their position that they are not relegated to the administrative remedy of section 31(b) of the Act, plaintiffs vigorously contend that section 43 (Ill. Rev. Stat. 1987, ch. 111½, par. 1043) applies. This section allows the State's Attorney or Attorney General to bypass filing a complaint with the Illinois Pollution Control Board for statutory violations "[i]n circumstances of substantial danger to the environment or to the public health of persons." (Ill. Rev. Stat. 1987, ch. 111½, par. 1043. See *People ex rel. Scott v. Janson* (1974), 57 Ill. 2d 451, 312 N.E.2d 620 (the availability of an administrative remedy does not prevent Attorney General from bringing civil action to enjoin public nuisances).) It follows, therefore, that if plaintiffs' complaint alleges facts sufficient to demonstrate a substantial danger to the environment, then plaintiffs are statutorily entitled to proceed in the circuit court without prior resort to the Pollution Control Board.

■ Defendants argue that the allegations in plaintiffs' complaint portend possible future malfunctions and calamities, but are unsupported by any specific medical or chemical facts. In *Parsons v. Walker* (1975), 28 Ill. App. 3d 517, 521, 328 N.E.2d 920, 924, the court set forth the general requirements for a valid complaint for injunctive relief:

"[T]he complaint [must] state essential facts showing the plaintiff's cause of action [citation], and the facts alleged must establish that if the acts of the defendant are not enjoined, substantial injury will result to the plaintiff. [Citation.] It is not sufficient to allege injury or a mere apprehension or fear of injury, but rather the complaint must show that defendant has actually done or threatened to do the act sought to be enjoined and that [it] is wrongful or unauthorized if by a public official."

We have reviewed *Parsons* and find that the allegations of environmental danger there are of a much more speculative nature than those in the case before us. In *Parsons*, plaintiffs alleged that the construction of a certain reservoir as part of a Federal flood control project would result in the flooding and destruction of a public park held in trust by the University of Illinois. In all other respects, the complaint, it would appear, contained conclusionary allegations of statutory, constitutional and public trust violations. Under the circumstances, the court ruled that plaintiffs' complaint insofar as it sought to enjoin defendants' cooperation with the project on environmental grounds was clearly premature. The count complaining of an alienation of the trust by the University Board of Trustees and seeking to enjoin their cooperation with the project was sustained.

Our reading of *Parsons* does not support defendants' contention here that plaintiffs' complaint must be dismissed for failure to allege the specific chemistry of the pollutants in the leachate produced by the waste disposal facility or the specific medical consequences of human, animal or vegetable ingestion of leachate migrating off the site. It is enough, we believe, to have alleged specific facts giving rise to a reasonable inference that if the operation is not restrained leachate will migrate off the site and pollute the water that feeds several hundred private wells in the area served by the same aquifer that surrounds the site. We do not construe the expression "substantial danger to the environment" to mean only proven damage in the area affected. The term "danger" imports a threatened "risk" or "exposure" to harm—necessarily an anticipated, rather than present, injury. Plaintiffs here have alleged specific facts about the location of the site, its relation to water resources serving hundreds of nearby residents, and the inadequacy of Waste Management's proposals for preventing leachate migration or harmful pollution to the environment. Whether leachate will reach other properties and will be environmentally harmful is a matter about which experts may debate at trial. We are not prepared to hold that plaintiffs' failure to specify in greater detail the chemical and medical consequences of leachate migration renders their complaint too speculative or a premature pursuit of the extraordinary relief of injunction.

■ With respect to defendant Agency, we acknowledge that the decision in *M.I.G. Investments, Inc. v. EPA* (1988), 122 Ill. 2d 392, 523 N.E.2d 1, was released after the circuit court entered its order of dismissal in this case. In *M.I.G.* our supreme court determined that a vertical expansion of an existing pollution control facility expands its boundaries so as to constitute a "new" regional pollution control facility under section 3.32 (formerly 3x(2)) of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1003.32). As a consequence, local governmental approval pursuant to sections 39(c) and 39.2 (Ill. Rev. Stat. 1987, ch. 111½, pars. 1039(c), 1039.2) is required before a supplemental permit to increase the vertical boundaries may be issued by the Agency. Because the decision concerns procedural, rather than substantive rights, the court's holding applies in this case even though the permit here at issue was granted by the Agency in 1985.

■ Finally, we have reviewed the State's arguments in support of its motion for leave to file a third amended complaint. The proposed amended complaint advances several alternative theories for relief, all of which will be resolved upon reinstatement of plaintiffs' second amended complaint. We find that the trial court did not abuse its dis-

cretion in denying the State's post-judgment motion insofar as it sought leave to amend.

In sum, we hold that plaintiffs' second amended complaint was improperly dismissed and that plaintiffs properly brought their complaint under section 43 and were not required to pursue their administrative remedy pursuant to section 31(b) of the Act. Plaintiffs' second amended complaint is hereby reinstated. We affirm the circuit court's denial of the State's motion for leave to file a third amended complaint.

Affirmed in part; reversed in part and remanded.

HEIPLE and STOUDER, JJ., concur.