MODINE MANUFACTURING COMPANY, Petitioner, *v.* THE POLLUTION
CONTROL BOARD *et al.,* Respondents.

Second District (2nd Division)    No. 74-381

Opinion filed July 20, 1976.—Rehearing denied August 24, 1976.

Richard J. Kissel, Sydney G. Craig, Thomas H. Donohoe, and Rodney W. Osborne, all of Martin, Craig, Chester & Sonnenschein, of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago (Marvin I. Medintz, Assistant Attorney General, of counsel), for respondents.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Petitioner, Modine Manufacturing Company, appeals from an order of the respondent, Pollution Control Board, in which respondent granted petitioner a variance from specific water and effluent standards but rejected petitioner's request to have a stream reclassified as secondary-contact water.

Petitioner operates a plant in Ringwood, Illinois, where it manufactures air conditioning condensors and evaporators. The plant uses a substantial amount of water which is drawn from its wells and discharged into a three-state lagoon treatment system. From the lagoons, the waste flows into a stream leading to Dutch Creek.

In 1972, petitioner investigated alternative methods of treating the plant's discharge in order to comply with respondent's effluent standards. It rejected several conventional osmosis systems as economically unfeasible, and decided upon a novel system which would allow approximately 90% of the waste water to be recycled for use by its plant. Since this plan was virtually untested, petitioner decided it would be more convenient to test the system at its Tennessee plant where other environmental equipment was scheduled to be installed. There, the system proved a success and petitioner prepared for a similar installation at its Ringwood plant. On January 9, 1974, as part of this preparation, petitioner applied to respondent for a one-year variance from the applicable effluent standards, the year being the time it would require to construct the new system.

Specifically, petitioner sought a variance from the regulations which (1) limit the amount of zinc allowed in waste water, and (2) establish the requirements for a three-stage lagoon. The petition averred that if the requested variance were granted, at year's end, the plant's discharge into the stream would comply with the effluent standards applicable to secondary-contact water. At the time the petition was filed, however, the stream was classified as general use water for which the applicable effluent standards were more stringent than those applied to secondary-contact water. Thus, petitioner additionally sought to have respondent reclassify the stream as secondary-contact water.

Respondent had 90 days within which to act upon the petition (Ill. Rev. Stat. 1973, ch. 111½, par. 1038; see Rule 408[1]) but this time limit was

---

[1] Rules cited are procedural rules, and regulations cited are water regulations—all as adopted by respondent. Rule 408 provides:

"*Decision.* The Board shall render a final decision upon the petition within ninety days after the filing of the petition as provided by statute, except that any party may agree to waive his right to a decision within 90 days and that time included in a continuance granted at the request of the petitioner shall not be counted. When exigencies of time require, the Board may delay the filing of an opinion until not more

extended by stipulation of the parties. On July 11, 1974, respondent rendered its opinion wherein the variance was granted and the stream was reclassified as secondary-contact water. The respondent relied on Regulation 302(k) which provides that secondary-contact waters are those "in which, by reason of low flow or other conditions, a diversified aquatic biota cannot be satisfactorily maintained even in the absence of contaminants." The opinion summarized the evidence and, in concluding that the reclassification was warranted, found that the evidence established that a diverse aquatic biota could not be satisfactorily maintained.

Subsequent to this decision, the Environmental Protection Agency (Agency) filed, and respondent granted, a petition for reconsideration pursuant to Rule 334.[2] Respondent, on October 17, 1974, without having held an additional evidentiary hearing, but, upon briefs and argument, issued a new opinion in which it affirmed its prior grant of the requested variance but reversed its earlier reclassification of the stream.

Under the second opinion, petitioner's stream discharge will not conform to the applicable effluent standards regardless of the success of the new water treatment system. Further, it would be necessary for petitioner to obtain periodic variances from the standards. Petitioner appeals contending that respondent lacked the power to reconsider the matter and, even if it had the power, the refusal to reclassify the stream as secondary-contact water is against the manifest weight of the evidence. In addition, petitioner contends that although it did stipulate to extend the time for a decision on its variance petition, respondent's decision was rendered after the stipulated date. Petitioner argues that respondent thus violated the 90-day rule and its petition, including the stream reclassification, should have been granted as a matter of law.

Section 38 of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1038) provides, "If the Board fails to take final action upon a variance request within 90 days after the filing of the petition, the petitioner may deem the request granted * * *." Petitioner initially agreed, by letter, to extend the date of decision to April 6, 1974. Subsequently, however, it stipulated to another extension—to July 11— the date on which the initial opinion was rendered. Accordingly, we find no merit in this contention.

than 30 days after the filing of its final order under this section. Where the petition for variance is amended, the 90-day period shall commence from the date of the amendment.* * *"

[2] Rule 334, entitled *Motion Subsequent to Entry of Final Order,* Provides:
"Within 35 days after the entry of a final order and within such further time as the Board may allow, any party may file a motion for rehearing or modification of the order, or to vacate the order or for other relief.* * * "

Regarding petitioner's claim that respondent lacked the power to reconsider its first opinion, Rule 334 states that within 35 days after the Board's entry of a final order, any party may petition for a rehearing. Petitioner contends that nowhere within the Environmental Protection Act has the legislature empowered the Board to allow rehearings after entering a final order.

■■ While an administrative agency is a creature of statute and may allow a rehearing only when authorized to do so by statute (*Pearce Hospital Foundation v. Public Aid Com.*, 15 Ill. 2d 301, 307 (1958)), the legislature has authorized the Board to conduct rehearings. Section 5(d) of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1005(d)) details various types of hearings the Board may conduct and then adds that the Board may hold "such other hearings as may be provided by rule." In addition, section 26 of the Act empowers the Board to adopt the procedural rules necessary to accomplish the purposes of the Act. (Ill. Rev. Stat. 1973, ch. 111½, par. 1026.) We hold that these two sections, when read together, provide the necessary authority for the respondent to hold rehearings as a procedure to correct any error, omission or oversight found in its first consideration.

Citing *Wachta v. Pollution Control Board*, 8 Ill. App. 3d 436 (1972), petitioner claims the Board was estopped from reconsidering its first decision. In *Wachta* some eight months intervened between the time petitioners were granted authority to proceed and action was taken to retract such authority. Meanwhile, petitioners, in reliance upon the original authority, expended large sums of money. Here it is asserted that, in reliance upon the original decision, petitioner, as of October 11, 1974 (a time subsequent to the motion for rehearing being filed and allowed), incurred financial expenditures and commitments in the sum of $173,000 for the construction of a wastewater treatment recycle system. We find petitioner's alleged reliance unwarranted. The Agency had the right, within 35 days of the original order, to either appeal or move for a rehearing. It chose the latter course. Any reliance by the petitioner upon the original decision before it became final was premature. Expenditures made under such circumstance will not be grounds for invoking the doctrine of equitable estoppel.

Petitioner's next contention is that respondent's refusal in its opinion on rehearing to reclassify the stream was against the manifest weight of the evidence. In support, petitioner relies on the testimony of its expert witness, Dr. Charles Wahtola, a fisheries biologist who had performed various tests on the stream prior to the hearing. Dr. Wahtola defined diversified aquatic biota as the presence of various trophic levels: phytoplankton, zooplankton, benthos and fish. He then testified that although his tests revealed that a diversified aquatic biota was present, it

could not be satisfactorily maintained because of the unstable environment present in the stream. He cited the oceans and the lakes of relatively ancient origin as examples of water containing stable environments able to support a diversified aquatic biota. He indicated that due to the fact that the stream had an intermittent flow it could not always support a diversified aquatic biota.

The testimony presented by the Agency, while agreeing with Dr. Wahtola's definition of diversified aquatic biota, disagreed with his theory of the necessity of a stable environment. The Agency's witnesses stated that even if the stream bed were to become dry, the organisms necessary for diversity would survive in the mud until the flow returned and the organisms were able to repopulate the stream. While Dr. Wahtola agreed that even if this particular stream were to become dry diversity would eventually return upon resumption of the water flow, he challenged the conclusion that this constituted the requisite maintenance of a diversified aquatic biota.

In its second opinion, respondent accepted the testimony of the Agency's expert and, in so doing, rejected Dr. Wahtola's theory that a stable environment is a requisite factor for a diversified aquatic biota to exist. The respondent reasons that if stability were required for a diversified aquatic biota, few, if any, small streams could maintain such diversity. The respondent concluded that the requirement of Regulation 302(k)—that a diversified aquatic biota be satisfactorily maintained—is satisfied when, as here, diversified aquatic biota exists and there is a potential that it could be maintained.

■■ We do not find such a construction of Regulation 302(k) unreasonable. An administrative agency has the power to construe its own rules and regulations to avoid absurd or unfair results. (See *Hoffman v. Wilkins,* 132 Ill. App. 2d 810, 820 (1971).) As the Board's opinion points out, the regulation does not mention the concept of stability and if Dr. Wahtola's interpretation were adopted, few, if any, small streams could maintain a diversified aquatic biota. The result would be that the small streams would not qualify as general use water and thus would be subject to the less stringent effluent standards for secondary-contact water. Deference must be given to the Board's interpretation of its own rules and regulations and the reviewing court will not overrule the Board's construction unless it is plainly erroneous. *(Heifner v. Board of Education,* 32 Ill. App. 3d 83, 87 (1975); *Scheffki v. Board of Fire & Police Commissioners,* 23 Ill. App. 3d 971, 973 (1974); see also *Chrobak v. Metropolitan Life Insurance Co.,* 517 F. 2d 883, 886 (7th Cir. 1975); *Rossetti Contracting Co. v. Brennan,* 508 F.2d 1039, 1042 (7th Cir. 1974); *Standard Fruit & Steamship Co. v. Midwest Stock Exchange,* 178 F.

Supp. 669, 672 (N.D. Ill. 1959).) We find no plain error in the Board's construction of Regulation 302(k).

■■ We similarly find that the evidence supports the conclusion of the respondent in its application of Regulation 302(k) in this case. Both sides in this case agreed that a diversified aquatic biota existed and even if the stream were to become dry the potential for diversity remained. A reviewing court will overturn an administrative order only when it is found to be against the manifest weight of the evidence. (See *Southern Illinois Asphalt Co. v. Pollution Control Board*, 60 Ill. 2d 204, 207 (1975); *Holiday Inns Inc. v. Pollution Control Board*, 27 Ill. App. 3d 704, 707 (1975); *Cobin v. Pollution Control Board*, 16 Ill. App. 3d 958, 967 (1974).) We do not find the order appealed to be against the manifest weight of the evidence and it is, therefore, affirmed.[3]

Order affirmed.

RECHENMACHER and DIXON, JJ., concur.

---

[3] The Agency has advanced the argument in this court that the Board cannot, in a variance proceeding, reclassify a stream inasmuch as such action would amount to a regulatory determination. In a regulatory hearing, the rights of the parties are different, as too are the notice requirements. In view of the disposition of the other issues in this appeal, we find it unnecessary to address this point.