THE CITY OF EAST PEORIA *et al.*, Petitioners, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District   Nos. 82—596, 82—635, 82—648 cons.

Opinion filed August 23, 1983.

G. Edward Orr, Assistant State's Attorney, of Pekin, for petitioner Board of Supervisors of Tazewell County.

Carl F. Reardon & Associates, Ltd., of East Peoria, for petitioner City of East Peoria.

Tyrone C. Fahner, Attorney General, of Springfield (Nancy J. Bennett, Assistant Attorney General, of counsel), for respondent Pollution Control Board.

Pedersen & Houpt, of Chicago, for respondent Waste Management of Illinois, Inc.

JUSTICE SCOTT delivered the opinion of the court:

Waste Management of Illinois, Inc., petitioned pursuant to the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1001 *et seq.*) for approval to locate a regional pollution control facility, *i.e.*, sanitary landfill, in an unincorporated area of Tazewell County, Illinois. The Tazewell County Board of Supervisors first considered the petition and denied it. A review of that decision was conducted by the Illinois Pollution Control Board, and the Board reversed the Tazewell County decision and approved the petition. We are asked to consider the Pollution Control Board's reversal order under administrative review procedures set forth in section 41 of the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1041). The administrative review provided for therein is afforded directly in the appellate court and not in the circuit court.

According to the Illinois Environmental Protection Act,

"*** no permit for the development or construction of a new regional pollution control facility (sanitary landfill) may be granted *** unless the applicant submits proof *** that the location of said facility has been approved by the County Board of the county if in an unincorporated area, or the governing

body of the municipality when in an incorporated area in which the facility is to be located ***." (Ill. Rev. Stat. 1981, ch. 111½, par. 1039(c).)

The Act further provides:

"[T]he County Board *** shall approve the site location suitability for such new regional pollution control facility only in accordance with the following criteria:

(i) the facility is necessary to accommodate the waste needs of the area it is intended to serve;

(ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

(iii) the facility is located so as to minimize incompatability with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

(iv) the facility is located outside the boundary of the 100 year flood plain as determined by the Illinois Department of Transportation, or the site is flood-proofed to meet the standards and requirements of the Illinois Department of Transportation and is approved by that Department;

(v) the plan of operations for the facility is designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents; and

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows." (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2(a).)

Finally, the Act provides that in determining the suitability of the landfill site, the county board must hold at least one public hearing, with notice of such hearing published in a newspaper of general circulation and directed to all members of the General Assembly from the district in which the proposed site is located. Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2(d).

On December 21, 1981, Waste Management of Illinois, Inc., filed its application for approval of the landfill site. On February 18, 1982, the county board held the mandated hearing and granted site approval finding that Waste Management had met its burden of proof on each of the six criteria set forth in the Act. Subsequently, on February 24, 1982, the city of East Peoria filed a petition with the county board requesting that the previous decision be set aside and that the public hearing be reopened, alleging as a basis for its petition certain misstatements of a Waste Management witness at the first hearing. In response to East Peoria's petition, the County Board set aside its

February 18 decision and reopened the public hearing on March 24, 1982. Following this reopened hearing, on April 19, 1982, the Taze-well County Board denied Waste Management's petition for site location finding that the landfill facility was not so designed, located and proposed to be operated so that the public health, safety and welfare was adequately protected.

It is undisputed that the evidence before the county board demonstrated that the proposed landfill site was directly over the Sankoty Aquifer. An aquifer is a water-bearing underground layer of sand or gravel; such a layer is a source of ground water tapped when a well is dug. (*Crookston Cattle Co. v. Minnesota Department of Natural Resources* (Minn. 1981), 300 N.W.2d 769.) The evidence also demonstrated that the village of Washington, the city of Peoria, the village of Morton, the North Tazewell Public Water District, and the city of East Peoria all draw water for public water supplies from the Sankoty Aquifer. The proximity of landfill wastes and public water was the basis of the county board's public health concern and of the site location denial.

To prevent potential contamination of the aquifer, Waste Management proposed to design and construct the landfill facility with a clay liner. According to Waste Management's application, inspections and borings of the sides and bottoms of the landfill would be made to insure that a minimum of 10 feet of undisturbed clay would exist under the landfill and around the sides. Where clay seals were not naturally found, man-made clay seals would be compacted to a thickness of 12 feet. According to Waste Management's application, it would require pollutants 50 years to penetrate the 10-foot clay liner which it proposed for the landfill, and it would take an additional 90 years to penetrate the 90 feet of soil separating the clay liner from the Sankoty Aquifer. As the contents of the landfill gradually leak through the 10 feet of clay and 90 feet of soil below the clay layer, attenuation and cationic exchange would tend to clean the leaching materials. According to one expert, a two-foot layer of clay would be adequate to clean the leachate.

Testimony presented at the hearing before the county board tended to show that the time necessary for materials to leak from the landfill as estimated in Waste Management's application was incorrect. The estimates contained in the application were based on certain assumptions made prior to the formulation of precise design plans for the landfill. Calculating the rate of leakage using the final design plans, Waste Management's own expert shortened the time period necessary to penetrate the 10-foot clay layer from 50 years to 33

years. It was also revealed in the county board's hearing that the application's estimate of 90 years to penetrate the soil layer between the clay liner and the Sankoty Aquifer was based upon the assumption that the *average* depth of this soil layer was 90 feet. The *least* depth of this second strata of soil was estimated at 50 feet, and the time required for material from the landfill to leak through this second layer into the Aquifer at the point of least depth would be proportionately reduced.

Finally, the county board heard testimony that soil borings and geological sections included in plans for the landfill site demonstrated the presence of numerous sand and gravel deposits. These sand and gravel deposits would significantly affect the rate at which material from the landfill would leak through the protective clay liner and the strata of soil between the liner and the Sankoty Aquifer. According to at least one engineer who appeared before the county board, it would not be possible to assure that there would be no sand and gravel deposits in the natural 10-foot clay liner, not even with the use of soil borings.

While the evidence presented to the county board was extensive, and offered to support each of the six statutory criteria we listed at the outset, the portions of the administrative record we have excerpted are crucial to the key issue presented for our review.

Following the decision of the Tazewell County Board, the petitioner, Waste Management, sought to contest the denial of its application before the Illinois Pollution Control Board. Such a contest is governed by the procedures of section 40.1 of the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1040.1). The statute cited mandates that the hearing to contest the county board's decision "shall be based exclusively on the record before the county board," that "[t]he burden of proof shall be on the petitioner," and that the Pollution Control Board's decision following the hearing shall set forth in writing the Board's assessment of "the fundamental fairness of the procedures used by the County Board *** in reaching its decision." In its written decision, the Pollution Control Board noted that the Tazewell County Board had concluded that the proposed sanitary landfill was not so designed, located and proposed to be operated that the public health, safety and welfare would be protected. The Pollution Control Board found that:

> "It is clear from the record that Tazewell County came to this conclusion due to concern that the proposed landfill might leak, and that the nonhazardous special wastes might find their way down through the intervening layer of clay into the

Sankoty Aquifer, and eventually affect local drinking water supplies which, for the most part, are obtained from that Aquifer.

This situation concerns the design and construction of the landfill and the underlying geology and hydrology, rather than the site itself. These highly technical issues have historically been the purview of the Illinois Environmental Protection Agency (Agency) under the Act. When the legislature enacted Public Act 82—782, its intent was to give local authorities the power to review the effect of the proposed landfill on the immediate area with regard to the six express criteria. There was no intent to give the local authorities concurrent jurisdiction with the Agency to review highly technical details of the landfill design and construction.

* * *

[T]he Tazewell County decision concerning public health, safety and welfare address[es] highly technical issues and [is] beyond the authority of Tazewell County's review." Pollution Control Board, Opinion and Order August 5, 1982, at 10-11.

Accordingly, the Pollution Control Board conducted its own *de novo* consideration of the "highly technical details" of the design and construction features of the landfill and the underlying geology and hydrology, and concluded that based upon the record of the Tazewell County public hearing, "the negative finding concerning the public's health, safety and welfare [was] not warranted." Pollution Control Board, Opinion and Order, August 5, 1982, at 10.

The Illinois Environmental Protection Act mandates that the County Board shall approve the site location suitability for sanitary landfills as proposed in the instant case only if

"the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; * * *." (Ill. Rev. Stat., 1982 Supp., ch. 111½, par. 1039.2(a)(ii).)

Despite this unequivocal statutory directive to consider the public health ramifications of the proposed landfill's design at a given site, the Pollution Control Board, in its decision as quoted above, concluded that the statute does not give the county jurisdiction "to review highly technical details of the landfill design and construction." The Board's position appears to be at odds with the express, unambiguous language of the statute.

In support of its decision, the Pollution Control Board cites an isolated remark made during the General Assembly's debate over this

section of the Environmental Protection Act.

> "The legislative history of the statute reveals the separation of review criteria between the local authorities and the Agency. During debate in the House of Representatives on June 17, 1981, sponsor Representative Breslin stated, after reviewing the criteria to be applied by the local authorities, 'they are not to make technical decisions as to the suitability of the site, rather that power still lies in the Environmental Protection Agency.' The local authorities may address the health and welfare of its citizens with regard to the general location of the site and effects such as run off and flooding, road litter, potential noise, disposition of landfill gas, and especially final configuration of the site with respect to ultimate potential uses." Pollution Control Board, Opinion and Order, August 5, 1982, at 10.

We believe, however, in construing a legislative enactment, we must first look to the words used in the statute. It is only when words are inadequate or ambiguous that we may turn to the legislative history and other interpretive aids to discover legislative intent. (*Illinois Power Co. v. Mahin* (1977), 49 Ill. App. 3d 713, 364 N.E.2d 597, *aff'd* (1978), 72 Ill. 2d 189, 381 N.E.2d 222.) Where the statute unambiguously requires the county board to consider the public health ramifications of the sanitary landfill's design at a given site, to conclude that the county board has no jurisdiction to consider the public health ramifications of the sanitary landfill's design would be nothing short of a judicial rewriting of the General Assembly's act. Therefore, we believe the Pollution Control Board erred in its conclusion that the county board had no jurisdiction to consider the public health ramifications of the proposed landfill's design.

■ As a result of the Pollution Control Board's erroneous interpretation of the law, it reviewed the evidence in the record concerning the public health ramifications of the sanitary landfill on a *de novo* basis, substituting its own opinion and determinations for the opinion and determinations made by the Tazewell County Board. No deference to the findings of the Tazewell County Board was given; no presumption of validity to the findings of the Tazewell County Board was afforded. In administrative law, the determinations and conclusions of the fact finder, in this case the Tazewell County Board, are generally deemed conclusive. The reviewing tribunal is not allowed to determine issues independently, to substitute its own judgment, or to reweigh the evidence. In other words, the reviewing tribunal should not reverse the findings and conclusions initially reached simply because it would have weighed the evidence in a different manner. (1 Ill. L. &

Prac. *Administrative Law & Procedure* sec. 50 (1953).) When the Pollution Control Board acts in a quasi-judicial role in reviewing decisions of the Environmental Protection Agency, it has been held that the decisions of the Agency are to be reversed only if they are against the manifest weight of the evidence. (*Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258; *Mathers v. Pollution Control Board* (1982), 107 Ill. App. 3d 729, 438 N.E.2d 213.) The statute that provides the procedure for the Pollution Control Board's review of Environmental Protection Agency decisions (Ill. Rev. Stat. 1981, ch. 111½, par. 1040) is essentially identical to the statute which provides a procedure for the Pollution Control Board's review of the instant decision by the Tazewell County Board (Ill. Rev. Stat. 1981, ch. 111½, par. 1040.1). Where, as here, the procedure for review is identical, we believe the standard of review should also be identical, and the rules set forth in the *Landfill, Inc.* decision and the *Mathers* decision should apply to the case before us. This standard of review, as pointed out earlier, represents no departure from established principles of administrative law. We conclude, therefore, that it was error for the Pollution Control Board to consider on a *de novo* basis the evidence in the record concerning the public health impact of the proposed sanitary landfill. It was error to weigh the evidence in the record as if the evidence were being considered as a matter of first impression. Instead, the Pollution Control Board should have determined whether the Tazewell County Board's conclusions concerning the public health consequences of the proposed siting of the sanitary landfill were against the manifest weight of the evidence.

■ Our first duty in considering a complaint for administrative review is to determine if the inferior tribunal applied the proper test to the record before it. (*Board of Education v. Ingels* (1979), 75 Ill. App. 3d 334, 394 N.E.2d 69.) Where, as here, the inferior tribunal applied the wrong standard of review to the evidence, the resulting finding is invalid, and there is no valid order subject to administrative review. (*Board of Education v. Ingels.*) And, where there is no valid order subject to our review, we are forced to remand the matter to the inferior tribunal so that it might reconsider its decision in light of the appropriate standard. *Board of Education v. Ingels.*

Accordingly, we remand this case to the Pollution Control Board for further proceedings consistent with the view set forth herein.

Reversed and remanded.

STOUDER, P.J., and BARRY, J., concur.