WASTE MANAGEMENT OF ILLINOIS, INC., Petitioner, *v.* THE POLLU-
TION CONTROL BOARD *et al.*, Respondents.

Second District   No. 83—166

Opinion filed May 8, 1984.

Richard V. Houpt and Donald J. Moran, both of Pedersen & Houpt, of Chicago, and Robert Casey, of Casey, Krippner & Callahan, of Geneva, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Gerald P. Callahan, Assistant State's Attorney, of counsel), for appellee Lake County Board.

Donna R. Henderson, of Jacobs & Clark, Ltd., of Antioch, for appellee Village of Antioch.

JUSTICE LINDBERG delivered the opinion of the court:

Waste Management of Illinois, Inc., petitioned pursuant to the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1001 et seq. (Act) for site location approval of an expansion to its existing HOD sanitary landfill located in unincorporated Lake County, Illinois. After a hearing during which witnesses testified for Waste Management, the Lake County Staff Review Committee, and intervenor-respondent village of Antioch (the village or Antioch), respondent Lake County Board (LCB) denied Waste Management's petition, and this denial was affirmed by the Illinois Pollution Control Board (PCB). We are asked to consider the PCB's order under administrative review procedures set forth in section 41 of the Act. (Ill. Rev. Stat. 1981, ch. 111½, par. 1041.) For the reasons discussed herein, we affirm the order of the PCB.

The proposed site, rectangular in shape and approximately 30.2 acres in size, adjoins an existing, operating landfill on its southern boundary, vacant land owned by petitioner on its western boundary, Depot Street on its northern boundary and single-family zoned and developed land on its eastern boundary. West of the existing site is an industrial subdivision; south of the existing landfill is a vacant tract zoned for manufacturing and extending south to Route 173; east and southeast of the existing landfill is the Little Silver Lake subdivision of single-family residences; north of Depot Street the land is zoned and used for agricultural purposes.

Petitioner commenced the site approval process on May 14, 1982, by giving notice to property owners pursuant to the requirements of section 39.2(b) (Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2(b)), and on May 28, 1982, Waste Management submitted a request for site location approval to the chairman of the LCB. Petitioner requested approval to accept municipal and special wastes in an engineered landfill

to be located on the proposed site. Notice was given for a public hearing on the application scheduled for July 10, 1982. The public hearing which was conducted by a committee of five members of the LCB over 12 sessions consumed approximately 98 hours and 2,500 pages of transcript. Petitioner presented 10 witnesses; the village presented nine witnesses, and the Lake County Staff Review Committee presented six witnesses. One session was set aside for public opinion, and 23 people made comments.

On September 7, 1982, the Hearing Committee made its recommendation, specifically finding against petitioner as to three of the six criteria in section 39.2: the need for the proposed facility, its impact on the public health, safety and welfare, and whether the proposed facility was located so as to minimize incompatibility with and effect on the values of surrounding properties. The LCB on September 14, 1982, adopted a resolution denying approval of petitioner's siting request. On October 1, 1982, petitioner appealed the LCB's decision to the PCB under section 40.1(a) of the Act. Pursuant to section 40.1, a hearing was conducted on November 23, 1982. In an opinion and order dated December 30, 1982, the PCB affirmed the decision of the LCB.

On January 26, 1983, petitioner filed a motion for rehearing which the PCB denied on February 24, 1983. Petitioner filed its petition for review on February 25, 1983. On March 10, 1983, the village filed its motion to dismiss the appeal on the ground that the petition for review was not timely filed, which we have ordered taken with the case.

██ Prior to reaching the merits of this appeal, we first address the motion filed by the village to dismiss Waste Management's petition for review. The village contends dismissal is warranted because petitioner did not appeal from the PCB's final order within the statutorily-prescribed period of time. Specifically, the village argues the recent amendment to the Act (see Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2(f)) does not provide for a PCB rehearing procedure and in fact precludes the PCB from rehearing its own rulings.

Prior to the recent amendment to the Act, the PCB had adopted a rule providing for rehearings:

"Within 35 days after the adoption of a final order any party may file a motion for rehearing or modification of the order, or to vacate the order or for other relief. Response to said motion shall be filed within 14 days from the filing thereof. A motion filed within 35 days stays enforcement of the final order and the time for appeal from such order runs anew after the Board rules upon the motion. Failure of a party to appeal a final or-

der or to file for appellate court review within 35 days of adoption of the final order waives all right to review except as set forth in Rule 334." (Ill. P.C.B. R. 333.)

After the PCB entered its decision on December 30, 1982, Waste Management filed a motion for reconsideration on January 26, 1983, within the 35-day time period prescribed by Rule 333. the court denied the rehearing on February 24, 1983, and the next day, Waste Management filed its petition for review. Thus, Waste Management's petition was timely if Rule 333 tolled the 35-day petition period in section 40.1, but otherwise was untimely as filed later than 35 days after the PCB's December 30 decision.

We disagree with the village's construction of the statute. In construing an analogous section of the Act, this court in *Modine Manufacturing Co. v. Pollution Control Board* (1976), 40 Ill. App. 3d 498, 351 N.E.2d 875, held that the Act empowered the PCB to adopt a rehearing procedure. In *Modine*, the petitioner asserted that the PCB lacked the power to reconsider its opinions, but this court noted that two sections of the Act when read together provided the authority to conduct the rehearings: section 5(d) (Ill. Rev. Stat.1973, ch. 111½, par. 1005(d)), authorizing the PCB to conduct "such other hearings as may be provided by rule" and section 26 (Ill. Rev. Stat. 1973, ch. 111½, par. 1026), empowering the PCB to adopt rules to accomplish the purposes of the Act. (*Modine Manufacturing Co. v. Pollution Control Board* (1976), 40 Ill. App. 3d 498, 501, 351 N.E.2d 875, 878.) These same two sections when read in combination support the conclusion in the instant case that the PCB has authority to hear rehearing requests pursuant to section 39.2. Despite *Modine*, the village contends section 39.2(f) limits the PCB's authority to reconsider its own rulings. Section 39.2(f) states:

> "The siting approval, procedures, criteria and appeal procedures provided for this Act for new regional pollution control facilities shall be the exclusive siting procedures and rules and appeal procedures for such facilities. Local zoning and other local land use requirements shall not be applicable to such siting decisions." (Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2(f).)

Based upon this section and the absence of any specific rehearing procedure in the statute, the village argues the PCB is precluded from allowing rehearings and from enacting regulations authorizing a rehearing procedure.

We do not read section 39.2(f) as an intention by the legislature of nullifying the PCB's procedural rules in landfill siting appeals. Nothing in the statute indicates the legislature intended the PCB to be

able to review its decisions pursuant to Rule 333 in all matters other than those concerning landfill siting decisions. Rather, we construe section 39.2(f) as leaving undisturbed the PCB's preexisting procedural rules which are not in conflict with specific provisions of the Act. In the instant case, while section 39.2(f) states that Act's appeal procedures are exclusive, no procedure in that section is inconsistent with the rehearing procedure outlined in Rule 333. Furthermore, the rehearing procedure serves the laudatory purpose of promoting judicial economy by affording the PCB an opportunity to review its own decisions prior to a potential appeal to this court. Since we are unpersuaded that section 39.2(f) was intended to prevent the PCB from rehearing its siting decisions, we deny the village's motion to dismiss.

■■ The first argument raised by Waste Management is that the LCB's decision was a result of a fundamentally unfair decision-making process in violation of section 40.1 (Ill. Rev. Stat. 1981, ch. 111½, par. 1040.1). That section requires the PCB in reviewing the LCB's determination to include in its consideration "the fundamental fairness of the procedures used by the county board or the governing body of the municipality in reaching its decision." Both parties agree that the Act requires the LCB to act as a quasi-judicial body. This court has ruled that a county board's decision to grant or deny a permanent application is adjudicatory. *E&E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 596 n.1, 451 N.E.2d 555, 564 n.1.

Petitioner argues that the LCB in considering its application acted in a legislative and not in a judicial capacity in contravention of the statute. Petitioner emphasizes that the LCB did not deliberate or debate the merits of the application. This unquestioning acceptance of the report of the Regional Pollution Control Hearing Committee (Hearing Committee), petitioner argues, shows the LCB failed to consider the evidence regarding the six statutory criteria and thus, petitioner contends the process employed to deny its application was fundamentally unfair.

Petitioner's attempt to separate the consideration of its application by the LCB and the Hearing Committee is unavailing. The entire county board need not be present at the hearing held before the five-member committee for fundamental fairness does not require the personal attendance of the entire board. (*Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115; *E&E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 604, 451 N.E.2d 555, 569.) As long as the record was made available for review by the full county board, all members heard the case irrespective of their attendance.

(*E&E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 604, 451 N.E.2d 555, 569.) In this case, the entire record was available for all the board members to review. The only requirement imposed on the board by the statute is that its decision be in writing and specify the reasons for the decision. The LCB's decision in this case satisfies these requirements.

Our review of the procedure of the Hearing Committee also indicates that no fundamental unfairness occurred. Examples of fundamental unfairness include a hearing where the petitioner is prevented from cross-examining witnesses or from presenting its own evidence. (*E&E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 604, 451 N.E.2d 555, 569.) The 98 hours and 2,500 pages of hearing testimony demonstrate petitioner was afforded ample opportunity to present its case. The Hearing Committee collected and reviewed the evidence and made its recommendations; in other words, performed its adjudicatory function. The county board need not have conducted a debate on the merits of the Hearing Committee's recommendation because petitioner had already exercised its right to introduce evidence and rebut the arguments in opposition to the landfill application.

■ Petitioner complains of the intensity of citizen opposition and its concomitant effect on the proceedings and points to paragraph 15 of the Hearing Committee's findings which stated that the public overwhelmingly opposed the proposed landfill. We note, however, that the statute requires the LCB to conduct a public hearing concerning the site approval request and "[t]he public hearing shall develop a record sufficient to form the basis of appeal of the decision in accordance with Section 40.1 of this Act." (Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2(d).) Public participation not only is encouraged, but is required by the statute. We read paragraph 15 as evidence of the LCB's recognition of its statutory obligation under section 39.2(c) to consider public comment on its application. (Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2(c).) Nevertheless, petitioner argues, as a result of the substantial negative public reaction to its application, the decision-making process was unfair because the LCB's decision was based "not on evidence but on political concerns ***." The statute requires, however, only that the procedures be fundamentally fair. The procedures employed by the Hearing Committee provided a full and complete opportunity for petitioner to support its application. Failure of the full LCB to debate the Hearing Committee's recommendation does not evidence fundamental unfairness and the existence of strong public opposition does not invalidate the LCB's decision.

Petitioner presents no evidence that the procedures employed by the Hearing Committee and the full LCB denied petitioner a right to present its case. While the board members were aware of public opposition because of the statutorily-mandated public hearings, petitioner has not demonstrated that the board members decided on its application as a result of the public opposition and without consideration of the evidence. The only factor cited by petitioner is that more than half of the LCB members faced reelection within two months of the date of the decision. This fact, however, is not referenced in the record, and more important, is insufficient to establish a biased decision-making process. Where the statute requires the LCB to conduct a public hearing, a decision does not become unfair merely because elected officials recognize public sentiment. Petitioner here has failed to sustain its burden of showing that the procedures of the LCB or the decision-making process were fundamentally unfair.

■ Petitioner also argues the PCB improperly excluded from the record the transcript of the LCB's decision-making meeting. At the September 14, 1982, meeting, the LCB decided to deny approval of the landfill site. Petitioner proposed that the transcript be included in the record before the PCB, which the PCB's hearing officer allowed. The PCB, however, excluded the September 14, 1982, transcript from the record. As the PCB stated, section 39.2(d) and (e) require a county board to conduct at least one public hearing which develops a record sufficient for purposes of a section 40.1 appeal to the PCB. The county board must put its decision in writing with the reasons for its decision in accordance with the six statutory criteria contained in section 39.2(a). The PCB is required by section 40.1(a) to consider the written decision of the county board and the reasons for the decision, the transcribed record of the public hearing and the fundamental fairness of the county board's procedures in reaching its decision. Since the September 14 county board meeting held to adopt the Hearing Committee's recommendation is not a part of the section 39.2 hearing process, the PCB concluded, the transcript could only be germane on the issue of the fundamental fairness of the hearing or decision-making procedures. After reviewing the transcript and finding no evidence of fundamental unfairness the PCB excluded the evidence as immaterial.

We find that we need not determine whether the PCB's exclusion of the transcript was error, for the PCB clearly reviewed the transcript for evidence of fundamental unfairness prior to excluding it from the record. In its brief, petitioner relies upon this court's decision in *E&E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill.

App. 3d 586, 451 N.E.2d 555, where we said that to shield evidence of conflict and bias from judicial review "would frustrate the purpose of review since the statute directs the PCB to consider the fundamental fairness of the procedures at the County Board level." (116 Ill. App. 3d 586, 593, 451 N.E.2d 555, 562.) The PCB in the instant case recognized the transcript was relevant to the fundamental fairness inquiry, and therefore, reviewed it on this basis. Concluding that no evidence of fundamental unfairness was present in the September 14, 1982, transcript, the PCB determined the transcript was irrelevant to any other issue before it. Since the PCB did consider the transcript on the fundamental unfairness issue, we fail to see how its subsequent exclusion prejudiced petitioner. Any error in its exclusion, therefore, was harmless.

■ Petitioner also argues that the Hearing Committee failed to consider all six statutory criteria in violation of the Act. We agree with the LCB that the findings of the Hearing Committee indicate consideration of all of the criteria. When read together, findings three and four state that petitioner, who had the burden of proof, presented evidence on all six criteria, but the evidence was rebutted in part by the village. These statements make clear to us that the Hearing Committee considered all of the statutory criteria.

■ Petitioner next challenges the PCB's decision to review the LCB's denial of a permit application based upon the manifest weight of the evidence standard. Instead, petitioner argues the PCB should have reviewed the record adduced before the LCB *de novo*. Although we recognize that the statute as drafted does not clearly establish the proper standard to be applied by the PCB (see Houlihan & Flynn, *The Siting of Sanitary Landfills and Other Waste Management Facilities—The Legislature Acts*, 70 Ill. B.J. 434, 442 (1982)), the courts which have considered this question have concluded the PCB's application of the manifest weight standard is correct. (*Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 122 Ill. App. 3d 639; *City of East Peoria v. Pollution Control Board* (1983), 117 Ill. App. 3d 673, 680, 452 N.E.2d 1378, 1383; *E&E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 608, 451 N.E.2d 555, 572.) We therefore find no error in the PCB's application of the manifest weight standard to the decision of the LCB.

## NEED

■ Petitioner argues that both the PCB and the LCB erroneously concluded that there was no need for petitioner's proposed facility because of the existence of two other landfills. Section 39.2 directs the

local unit to approve a site location only if "the facility is necessary to accommodate the waste needs of the area it is intended to serve." (Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2(a)(i).) In its decision, the PCB affirmed the LCB's finding that petitioner had not demonstrated the site location was necessary for the area to be served. The PCB construed section 39.2(a)(i) to require that the landfill be necessary and not just convenient. Based upon this court's recent decision in *E&E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 451 N.E.2d 555, petitioner argues that the PCB erred in construing this criterion. In *E&E Hauling,* this court affirmed the county board's finding that the petitioners met their burden to show that the facility was necessary to accommodate the waste needs of the area. In construing this criterion, this court said:

> "The use of 'necessary' in the statute does not require applicants to show that a proposed facility is necessary in absolute terms, but only that the proposed facility is 'expedient' or 'reasonably convenient' *vis-a-vis* the area's waste needs. [Citations.] It would be unreasonable to require petitioners to prove that every other potential landfill site in the region is unsuitable; such a construction would prevent any landfill development if more than one suitable site could be found. This construction of the statute should be avoided as unworkable and implausible." 116 Ill. App. 3d 586, 609, 451 N.E.2d 555, 573.

This court in *E&E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 451 N.E.2d 555 recognized that absolute necessity was too stringent a standard and employed the terms "expedient" and "reasonably convenient" to describe the required level of proof. An expedient is defined as "a means devised or used in an exigency" thereby connoting an element of urgency in the definition of need. (Webster's New Collegiate Dictionary 399 (1979).) Reasonable convenience also requires a petitioner to show more than convenience. Recently, the third district of our appellate court defined this higher level of proof as a showing that the landfill be reasonably required by the waste needs of the area including consideration of its waste production and disposal capabilities. (*Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 122 Ill. App. 3d 639.) Our review of the record convinces us that petitioner did not establish any more than that the landfill would be convenient and thus, the PCB's ruling on this criterion was proper. Since we have already labeled the PCB's action in the instant case as adjudicatory, we also reject petitioner's contention that the PCB's construction of the need criterion was unconstitutional as an arbitrary and unreasonable exercise of the police

power.

The principal expert witness for petitioner on the need criterion was Richard Eldredge, an engineer with experience in solid waste management, who concluded that the landfill was necessary based upon certain governmental reports concerning licensed landfills and their projected lives and upon data obtained from Waste Management concerning areas served by the existing landfill site. In his opinion, landfills should be located within a 15-mile radius of the area served in order to minimize the cost of transportation to a disposal site. As noted by the LCB, however, Eldredge did not know the percentage of waste coming to petitioner's existing landfill from beyond the 15-mile radius or know which towns listed in the Pick-Up Study (supplied by petitioner and relied upon by Eldredge) were within the 15-mile radius. Eldredge's testimony, therefore, cannot support petitioner's assertion in its application that 90% of the waste received came from within a 15-mile radius of Antioch, Illinois. Eldredge testified that even if only 10% or 25% of the waste came from within the 15-mile radius he still would consider petitioner's proposed site necessary. This statement, the LCB argues, shows that Eldredge would testify that the landfill was necessary under virtually any circumstances. Inasmuch as Eldredge could not testify as to what percentage of waste came from within the 15-mile area, the LCB argued his conclusion regarding need is unsupported and unpersuasive. Eldredge further testified that without the proposed expansion, two other comparable sites would remain to serve the intended area: ARF in Grayslake having a remaining useful life of eight years, and BFI in Winthrop Harbor, having a useful life of 30 years. The existing site in Antioch, Eldredge stated, had a useful life of eight months and the Lake Landfill in Northfield Township, Cook County, had a three-year expected life.

Petitioner also relied upon the Lake County Board staff report, which noted that if the proposed facility were not accepted, "it is probable that the dislocation and redirection of the waste stream would result in a significant impact on the area." Absent the HOD landfill, the report continued, both BFI and ARF would have greater traffic and would suffer reduced life expectancies. Because the waste will have to be transported greater distances, the report stated, "the cost to local municipalities and unincorporated areas will increase significantly." The LCB challenges the Lake County report because of the drafters' reliance principally upon information contained in petitioner's landfill application, and not the evidence adduced at the hearing.

The LCB cited the testimony of Alfred J. Little, chairman of

Antioch's Landfill Study Commission, as support for its position that petitioner did not establish need. Little's testimony was based upon information provided by petitioner and the county's staff. On the basis of Little's testimony, the LCB stated in its decision that "if the site location is denied, there will remain 10.75 years for the County or Waste Management to find another landfill site given the remaining capacities of existing landfill sites serving the area." Noting that Little's testimony in this regard was unrebutted, the PCB stated the LCB's conclusion that petitioner failed to establish need was not against the manifest weight of the evidence.

While petitioner challenges Little's testimony on the basis that he is not an expert, this fact does not discredit otherwise persuasive testimony. (See *Ralston Purina Co. v. Pollution Control Board* (1975), 27 Ill. App. 3d 53, 58, 325 N.E.2d 727, 730.) Petitioner also attacks the accuracy of Little's projections, asserting that Little's opinion did not take into account the change in volume at the two comparable sites that would result from denial of the proposed site. We agree with the LCB that petitioner's argument is without merit. Based upon the data contained in the Andrews report, Little's analysis involved the projection of the lifespans of the BFI and ARF landfills including the diverted waste from the closed Antioch site. On the assumption that the landfill application would not be approved, Little estimated that the combined remaining capacity of the BFI and ARF landfills would be at least 10.75 years.

On very similar facts, the court in *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 122 Ill. App. 3d 639, held that the petitioner had failed to establish need to expand its existing landfill facility. The Will County Board had concluded that the expansion was not necessary because existing and available landfills were sufficient to handle waste production for over 10 years, and the board's decision was affirmed by the PCB. The PCB here likewise found that the uncontradicted testimony indicated existing available facilities could handle the waste production for 10 years. We find *Waste Management* persuasive support for our affirmance of the PCB in the instant case.

In its reply brief, petitioner cites *E&E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 451 N.E.2d 555, where this court concluded that the petitioner had satisfied the need criterion. There, the testimony indicated that three of the four existing waste disposal facilities in Du Page County had life expectancies of 10 years each and that the fourth facility had a life expectancy of two years. (116 Ill. App. 3d 586, 608, 451 N.E.2d 555, 572.) We believe

that *E&E Hauling* is distinguishable from the case at bar. There, this court recited the testimony of four witnesses on the necessity of the site expansion. Two of the witnesses specifically stated that they believed the facility was necessary, and the other two witnesses offered testimony supportive of the petitioner's application. This court specifically noted that "[n]one of the above testimony was rebutted or impeached." (116 Ill. App. 3d 586, 609, 451 N.E.2d 555, 573.) In contrast, the conclusions of the witnesses in the case at bar were conflicting on the need criterion and Eldredge's testimony was substantially impeached. In light of the disputed testimony, the findings of the PCB and the LCB here that the need criterion had not been satisfied by petitioner are not against the manifest weight of the evidence.

Petitioner does credibly argue that increased costs, distance and travel time do constitute evidence of need. (See *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 122 Ill. App. 3d 639.) Petitioner contends that the LCB and PCB improperly concluded that these factors played no part in determining need. Our review of the PCB's decision, however, convinces us that the PCB concluded the evidence was insufficient to establish need. Eldredge testified that in most cases, disposal costs doubled beyond the 15-mile radius. However, as the LCB points out, Eldredge did not know the percentage of waste within the 15-mile radius of the proposed site. Therefore, his generalization is insufficient to establish increased costs. In fact, the evidence established that the BFI landfill is 10.5 miles from the proposed site and the ARF landfill is 11 miles away. Within a 15-mile radius of the proposed site, 11 municipal landfills exist with the remaining lives of 40 years. Thus, petitioner failed to demonstrate that denial of the application will result in increased disposal costs.

■ The only other evidence of need cited by petitioner is contained in the Lake County Board staff report which stated that "[w]ith greater disposal distances, cost to local municipalities and unincorporated areas will increase significantly." While this statement if supported by evidence would be relevant to prove need, petitioner has not cited nor can we find any specific evidence demonstrating that the area intended to be served will experience increased costs if the proposed landfill application is denied. We note that similar generalized statements concerning increased costs were recently held insufficient to establish the need for an expansion of an existing landfill facility. (*Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 122 Ill. App. 3d 639.) Before the LCB, petitioner bore the burden of establishing need. Although advancing the argument that de-

nial of the application will increase service costs, petitioner has failed to present evidence supporting its statement. Absent such evidence, we conclude the petitioner has failed to sustain its burden and thus, the PCB's conclusion that petitioner has failed to establish need is not against the manifest weight of the evidence.

## COMPATIBILITY CRITERION

■ Petitioner next contends that the PCB improperly refused to consider the presence and impact of the existing, adjoining landfill thereby erroneously concluding that the proposed facility was not located so as to minimize incompatibility with and effect on the characters and values of the surrounding properties. (Ill. Rev. Stat. 1983, ch. 111½, par. 39.2(a)(iii).) In affirming the LCB's finding that petitioner had not satisfied this criterion, the PCB rejected petitioner's argument that the best evidence of the compatibility of the proposed facility was the presence of the existing facility in the area. Rather, the PCB ruled that the compatibility of the proposed facility must be assessed in the same light as a new facility. Section 39.2 of the statute requires the county board to apply the six criteria to new regional pollution control facilities. In section 3(x)(2) of the Act, new regional pollution control facilities are defined as "an area of expansion beyond the boundary of a currently permitted regional pollution control facility." (Ill. Rev. Stat. 1983, ch. 111½, par. 1003(x)(2).) We agree with the PCB that the clear intent of the statute is to require the local government units to consider a proposed facility expansion as a new and separate regional pollution control facility. Consistent with this legislative intent, therefore, petitioner should not be able to establish compatibility based upon a preexisting facility.

Petitioner presented three witnesses in connection with the third criterion: one on compatibility and two on the site's effect on land values. J. Christopher Lannert, a landscape architect and land planner, testified that the proposed landfill would not be incompatible with the character of the surrounding area. His opinion was predicated on the fact that the landfill operation and effects would be screened by earthen berms and vegetation. On cross-examination, Lannert testified that he only studied the impact of the proposed site on the property within 500 feet of the proposed facility and admitted he did not look beyond that point to determine whether more removed properties would be visibly impacted. By stating the impact would extend beyond 500 feet, the PCB implicitly concluded the scope of Lannert's study was too limited to meet the compatibility criterion. We agree with the PCB that the compatibility with the area of a landfill site

should be demonstrated by a study based upon an area greater than 500 feet surrounding the proposed facility. In this case, for example, the facility when full will remain in the area as a 30-acre mound with a height above grade of 70 to 90 feet. Furthermore, while there are several homes within 500 feet of the site, the record indicates 45 single-family homes are within 1,000 feet and 935 single-family homes and several apartments are within one-mile of the proposed site. Recognizing these facts, the PCB justifiably observed that "in this case a 30-acre mound with a height above grade of 70-90 feet would generate an effect upon the surrounding area to a greater extent than 500 feet."

In addition to the limited scope of his analysis, Lannert did not study the line of sight from the second floor of any homes in the surrounding area and did not determine whether the proposed site would be visible from downtown Antioch, one-half mile from the site. Lannert also admitted the proposed landfill site would obstruct the western view of landowners who would in fact be looking completely at the landfill. Lannert's testimony regarding the effect of the berms was less than conclusive. During the winter, Lannert noted that the defoliated trees would "sort of, filter that view." Moreover, Lannert admitted that not all the vegetation included in his screening design is on property owned or controlled by petitioner.

Several witnesses testified for the village regarding the landfill's incompatibility with the area. Robert B. Rennebohm, a landscape architect, testified that the proposed screening berms south of the tree line along Depot Street, the northern boundary of the proposed site, would cause many of the trees there to die within five to eight years. Even while the trees were alive, he stated, the landfill during the winter would be visible from the north because the trees would be defoliated. He also stated the top of the landfill would be visible from second-floor homes and that the proposed six-foot high northern screening berms would look unnatural and wall-like. Rennebohm concluded that the proposed landfill would not be visually compatible with the area to the north and northwest. urban planner Robert Duchek, who helped prepare the comprehensive plan of Antioch, Illinois, testified that the proposed landfill would not be compatible with the character of the surrounding area and would disrupt growth patterns set forth in the comprehensive plan.

Petitioner argues that its evidence need not demonstrate that the landfill site is compatible with the surrounding area, but rather only that petitioner's efforts have minimized incompatibility with the area. We reject the literal construction of the third criterion,

which petitioner advocates. Under this literal construction, any action, however small, taken by an applicant to minimize the landfill's incompatibility would satisfy the statutory requirement. Such a minimal requirement would render the criterion practically meaningless. Rather, we read section 39.2(a)(iii) as requiring an applicant to demonstrate more than minimal efforts to reduce the landfill's incompatibility. This court in *E&E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 451 N.E.2d 555, upheld a finding of the county board that the petitioner had satisfied this criterion. In considering the third criterion, this court emphasized that "[t]he testimony adequately showed that petitioners had taken and planned to take steps to do what they could to minimize the impact of the fill on the surrounding areas." (116 Ill. App. 3d 586, 614, 451 N.E.2d 555, 576.) Implicit in this statement is the conclusion that an applicant must demonstrate it has done or will do what is reasonably feasible to minimize incompatibility. Here, Lannert's study because of its limited scope did not even address the complete "surrounding area" and the testimony in opposition to the site demonstrated many inadequacies in the screening efforts. As such, while we recognize that petitioner introduced some evidence on minimization of incompatibility, we do not find it sufficient to conclude that the findings of the PCB are against the manifest weight of the evidence.

Petitioner also presented evidence regarding the effect of the proposed landfill on surrounding property values. Robert P. Schroeder, a real estate broker and appraiser, testified that the proposed landfill would not adversely affect surrounding property values. However, Schroeder does not hold a final designation in real estate appraisal. While not having any training in statistical analysis, Schroeder performed a trend analysis involving consecutive sales of properties in a nearby subdivision. His conclusion that property would not be devalued was based on this study. However, the Lake County Board staff report disputed the statistical methodology of Schroeder's appraisal report and questioned its reliability. Among staff criticisms were that the report was not based on comparable sales, was based on selected rather than random data, and utilized small samples. The PCB also criticized the report because of its reliance on a small sample and its emphasis on consecutive rather than comparable sales.

Petitioner's other valuation witness, William McCann, a real estate agent, consultant and broker, relied substantially on Schroeder's report. McCann did not perform his own study of the impact of the proposed site on the surrounding area. Nevertheless, relying upon data collected by Schroeder, he testified the proposed site would not

"unduly depreciate the surrounding property tax trend and values." The PCB rejected McCann's testimony as based in large part on Schroeder's study and instead relied upon the testimony of village witnesses in concluding the LCB's finding was not against the manifest weight of the evidence. The PCB cited the testimony of Mike Warren, a real estate broker with 10 years experience listing properties in Antioch. Warren testified that prior to 1977, the existing landfill to the west did not impact on the sales of properties in Little Silver Lake subdivision to the east. As the landfill expanded eastward, however, residential properties in that subdivision became difficult to market because of the landfill. His conclusion was that property values east of the existing site had been severely depreciated by the present landfill.

The PCB also cited testimony of the public regarding the effect of the proposed landfill on property values. Specifically, some residents of the Little Silver Lake subdivision which abuts the existing site said they experienced difficulty in selling their homes. The owner of the only business in the subdivision also testified that business had declined since petitioner's landfill operations began. The PCB properly found that petitioner's failure to satisfy the third criterion was not against the manifest weight of the evidence.

In light of our decision that the record supports the conclusions of the PCB on the need and incompatibility criteria, we need not consider the LCB's contention that the PCB erred in concluding that the LCB was without authority to consider highly technical matters regarding the landfill siting decision. We note, however, that had we reversed the PCB on the necessity and incompatibility criteria, we would nevertheless remand the cause to the PCB for consideration of whether the LCB's determination regarding the public health, safety and welfare criterion was against the manifest weight of the evidence. The LCB had concluded that the facility was not so designed, located and proposed to be operated that the public health, safety and welfare would be protected. Concluding that the findings of the LCB concerning this criterion involved highly technical issues beyond the jurisdiction of the local authorities, the PCB rejected the findings as beyond the statutory authority of the LCB. Several recent decisions of our appellate court, however, have reached the opposite conclusion and have held that the county board has the authority to consider such matters. (*County of Lake v. Pollution Control Board* (1983), 120 Ill. App. 3d 89, 457 N.E.2d 1309; *City of East Peoria v. Pollution Control Board* (1983), 117 Ill. App. 3d 673, 452 N.E.2d 1378; see also *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984),

122 Ill. App. 3d 639.) A remand of this cause is made unnecessary because of our affirmance of the PCB's decision denying the application for expansion of the existing sanitary landfill.

Accordingly, we affirm the order of the Pollution Control Board.

Affirmed.

HOPF and REINHARD, JJ., concur.